UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL G. ROCHE,

       Plaintiff(s),

v.

CHECKERS DRIVE-IN RESTAURANTS,
INC.,

       Defendant(s).

_____/

Case No. 09-10023

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [10]**

Plaintiff Daniel G. Roche filed this reverse-race discrimination action, alleging that Defendant Checkers Drive-In Restaurants, Inc. terminated his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), and the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2201, *et seq.* (ELCRA). Defendant denies that it discriminated against Plaintiff on the basis of race, and argues that Plaintiff: (1) is judicially estopped from bringing his reverse-race discrimination claims; (2) has failed to exhaust his administrative remedies; and (3) has failed to provide evidence to demonstrate either a prima facie case of reverse-race discrimination or raise a genuine issue of material fact regarding whether Defendant's decision to terminate him was pretextual.

This matter comes before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

## I. Facts

### A. The Parties: Roche and Checkers

Defendant is a Florida corporation with its headquarters located in Tampa, Florida. Defendant is principally engaged in the operation of double drive-thru restaurants. Defendant has twenty-one such locations in the Detroit metropolitan area. (Notice of Removal ¶ 3.)

Plaintiff is resident of Macomb County, Michigan. Plaintiff is also a former employee of Defendant who worked at several of its Detroit metropolitan area restaurants. The instant matter arose out of Defendant's termination of Plaintiff in January 2008. (Compl. ¶¶ 3-13.)

### B. Plaintiff's Employment History with Defendant

#### 1. 1987-1998: First Employment Period

Early in 1987, although the exact date is not clear from the record,[1] Plaintiff began his employment relationship with Defendant–a relationship that would span some twenty years. Following graduation from Central Michigan University in December 1986, Plaintiff took his first position with Defendant as a crew member at its 10 Mile and Gratiot restaurant. Plaintiff testified that within a year or two, he was promoted from crew member to shift manager. (Roche Dep., Def.'s Mot., Ex. A at 34-36.)

As a shift manager, Plaintiff instructed crew members on following proper procedures and had cash handling responsibilities. Plaintiff worked as a shift manager for

---

[1] Plaintiff testified in his deposition that he was unsure of the exact dates of his employment with Defendant. Plaintiff testified, however, that he was hired as a crew member three or four months after his graduation from Central Michigan University–as this was his first job out of college. (Roche Dep. at 34-35.) Plaintiff also testified that he graduated from Central Michigan University in December 1986. (*Id.* at 9.)

approximately five years before being promoted again–this time to the position of assistant manager. (*Id.* at 34-39.)

As an assistant manager, Plaintiff was responsible for the supervision of a particular shift. His duties as an assistant manager included: managing cash, placing inventory orders, creating crew member schedules, and ensuring that crew members followed proper procedures. (*Id.* at 57.) Plaintiff worked as an assistant manager for approximately four years before receiving his third promotion–to general manager. (*Id.* at 40.)

As a general manager, Plaintiff was responsible for an entire restaurant. His duties as a general manager included: paying bills, handling maintenance issues, ordering supplies, and overseeing the overall profit and loss for a particular restaurant. (*Id.* at 58-59.) Plaintiff worked as a general manager for about one year. At his deposition, Plaintiff testified that, while working as a general manager, he was having problems with his area supervisor. The area supervisor was concerned that the crew members under Plaintiff's supervision were not performing to corporate standards. As general manager, it was the responsibility of Plaintiff to maintain those standards, and the area supervisor did not believe that Plaintiff was doing so. The area supervisor also voiced concerns to Plaintiff regarding deficiencies in cash management, inventory control, and overall profitability. According to Plaintiff, the area supervisor, in counseling him about these issues, would yell and belittle him. (*Id.* at 41-47.) As a result of the issues between Plaintiff and his area supervisor, in 1998, Plaintiff voluntarily terminated his employment with Defendant to pursue career opportunities elsewhere. (*Id.* at 39-40, 47.)

From approximately 1998 through 2004, Plaintiff worked for Little Caesars as a general manager in one of its corporate stores, and then as an assistant manager in a

3

franchised store. From 2004 through 2005, Plaintiff worked at Nino Salvagio's as a Department Manager. (*Id.* at 24-34.) As a result of his hours being cut at Nino Salvagio's, Plaintiff attempted to restore his employment relationship with Defendant. (*Id.* at 49-50.)

### 2. 2005 - 2008: Second Employment Period

#### a. September 2005: Hired as Assistant Manager

In September 2005, Plaintiff applied to Defendant's Centerline restaurant for the position of assistant manager. (*Id.* at 51.) After submitting his application, Trent Shaw (Shaw), the area supervisor, interviewed, and subsequently hired, Plaintiff. (*Id.* at 52, 54.) At that time, Plaintiff executed the "Employee Acknowledgment Form" indicating that he had been provided a copy of the Checkers Employee Handbook and had reviewed the policies contained therein. (Def.'s Mot., Ex. D.) Plaintiff was also provided the "Register Operator/Cashier–Cash Handling Agreement" setting forth Defendant's policies regarding cash handling and management. (Def.'s Mot., Ex. I.) The Cash Handling Agreement, executed by Plaintiff, states as follows:

> If you have cash shortages or overages in excess of the company standard of .005% of net sales, you may be subject to disciplinary action. Excessive deletes cancels and voids will also subject you to disciplinary action. Repeat violations of cash policy can result in immediate termination of employment.

*Id.* Shaw also reviewed the Cash Handling Agreement with Plaintiff and emphasized how important it was to follow corporate policies and procedures to ensure that no loss of cash occurred within the restaurant, making it clear to Plaintiff how important the cash management policies were to Defendant. (Roche Dep. at 71.)

#### b. November 2005: Promoted to General Manager

4

In November 2005, just two months into Plaintiff's second employment period with Defendant, the general manager of the Centerline restaurant, in which Plaintiff worked as an assistant manager, resigned. To fill that vacant position, on November 22, 2005, Plaintiff was promoted to general manager. According to Plaintiff, he was promoted because he was very knowledgeable of Defendant's procedures and practices. (*Id.* at 55-56.) Plaintiff realized that his responsibilities would increase with this promotion, as he would now be responsible for everything related to that restaurant. Specifically, Plaintiff's responsibilities would include managing the overall profit and loss of the restaurant by overseeing food, paper and labor costs. Plaintiff's added responsibilities also included ensuring that the cash management policies were being followed by all crew members and that the registers were properly balanced at the end of each shift. (*Id.* at 58-59, 149.)

### c.  April 2006: Demoted to Assistant Manager

On April 8, 2006, while serving as the general manager of the Centerline restaurant, Plaintiff was involved in an incident that resulted in Defendant taking disciplinary action against him. As part of his general manager responsibilities, Plaintiff took cash from one of the front counter registers to balance that drawer with the daily receipts. Plaintiff counted the cash and placed it under a calculator on his desk. Plaintiff then went back to the front counter, leaving the cash unattended, to take cash from another register. When Plaintiff returned to his desk he discovered the cash that he left under the calculator was missing. (*Id.* at 64-66.)

Upon discovering that the cash was missing, Plaintiff searched the area around his desk. After an hour had passed, Plaintiff confronted other employees about the missing cash. Plaintiff did not call the police to report the incident. Plaintiff did, however, report the

incident to Shaw, his area supervisor. Shaw was mad–he was extremely angry that Plaintiff violated Defendant's cash management policy resulting in a loss of $495. (*Id.* at 67-70.)

Even though the money was eventually recovered, Plaintiff does not dispute that he made a mistake. In his handling of the cash, Plaintiff "made an error in judgment." (Pl.'s Resp. at 5.) Plaintiff acknowledges that the incident was a direct result of his failure to comply with Defendant's cash management policy. (Roche Dep. at 66-67.) As a result of the policy violation, on April 11, 2006, Shaw issued Plaintiff a written discipline. (Def.'s Mot., Ex. H.) At the time he issued the written disciple, Shaw again reviewed the cash management policy with Plaintiff, reinforcing the importance of full compliance. In addition to the written discipline, Shaw also decided to demote Plaintiff to assistant manager. (Roche Dep. at 70-71.)

### d.  September 2007: Promoted Again to General Manager

Approximately sixteen months after Plaintiff's demotion from general manager to assistant manager, he was promoted back into the position of general manager. In September 2007, the general manager in the St. Clair Shores restaurant resigned. Nigel James, Director of Operations, and Patrice Kelly (Kelly), who would soon be replacing Shaw as area supervisor, made the decision to promote Plaintiff to fill the vacant general manager position at the St. Clair Shores restaurant. (*Id.* at 78-80.) Although Kelly was initially opposed to promoting Plaintiff, she was instructed to do so by James, and she complied. (Kelly Dep., Def.'s Mot., Ex. B at 35-36.) On September 11, 2007, Shaw and Kelly informed Plaintiff of the decision to promote him to the position of general manager for the St. Clair Shores restaurant. (Roche Dep. at 80-81.)

After his promotion to general manager, Plaintiff experienced difficulties operating his restaurant and meeting corporate profitability standards. Among the six metropolitan Detroit restaurants that were under Kelly's supervision, Plaintiff's restaurant ranked last with respect to profit and loss figures. (Kelly Dep. at 39-42.) This poor performance was due, in part, to Plaintiff's failure to control labor and food costs. (Roche Dep. at 104-109; Kelly Dep. at 39-40.) Kelly verbally counseled Plaintiff on numerous occasions about the problems that his restaurant was experiencing, including the issues of cash management, excessive food and labor costs, and Plaintiff's tendency to work as a cashier during his shift. (Roche Dep. at 104-109; Kelly Dep. at 80-81.)

On October 30, 2007, approximately one month after his promotion to general manager, Kelly issued a written discipline to Plaintiff for a violation of the food cost policy. (Roche Dep. at 86, 106; Def.'s Mot., Ex. E.) Plaintiff does not deny that he violated the food cost policy, and admits that Kelly's issuance of the written discipline was entirely reasonable. (Roche Dep. at 106-107.)

On that same day, October 30, 2007, Kelly also issued Plaintiff a written discipline for the manner in which he voided sales and used coupons at the cash register–both of which are violations of the cash management policy. (*Id.* at 107-108; Def.'s Mot., Ex. F.) Plaintiff does not deny that he violated the cash management policy in this circumstance either. (Roche Dep. at 108.)

Less than three weeks later, on November 19, 2007, Kelly issued Plaintiff yet another written discipline for violating the cash management policy. (*Id.* at 95-96; Def.'s Mot., Ex. G.) The discipline was issued after an unexplained cash overage in the safe at Plaintiff's restaurant was discovered. Plaintiff does not dispute that the cash overage was a violation

7

of the cash management policy and that Kelly issued the written discipline because she believed he was responsible for the violation. Plaintiff also admits that, although he believes that the cash overage in the safe was caused by his assistant manager, he was ultimately responsible for any cash management policy violations because he was the general manager of the restaurant. (Roche Dep. at 96-98.)

### e.   January 2008: Plaintiff Fired

Plaintiff's fourth and final incident involving an alleged violation of the cash management policy occurred in January 2008, although the exact date is not clear from the record. According to Plaintiff, the incident arose because he permitted two crew members to use the same drawer at the same time. Kelly was visiting the restaurant and was present in Plaintiff's office when he was performing a cash count. As Kelly observed Plaintiff, she identified what she believed was a discrepancy in the cash count. Although the incident did not result in a loss of money, Plaintiff concedes that the drawer was not properly balanced and that there was a discrepancy with the cash report that was run. Kelly told Plaintiff that his permitting two employees to work from the same register, without reconciling the drawer after the first employee had completed his shift, violated the cash management policy. Although Plaintiff does not believe that his permitting two cashiers to work from the same register violated the cash management policy, he admits that he does not actually know whether it was a violation of the policy or not.[2] Plaintiff, however, does not dispute that Kelly

---

[2] The Cash Handling Agreement, executed by Plaintiff, states: "You are the only Team Member allowed to use a drawer once it has been issued to you. It is your responsibility. Always lock your drawer when not in use." (Pl.'s Mot., Ex. I.)

8

was genuinely concerned because she believed that he had violated the cash management policy. (*Id.* at 86-94, 98-99.)

Following this incident, Kelly decided to terminate Plaintiff's employment with Defendant. Kelly consulted with James and received his concurrence. According to Kelly, this decision was based on Plaintiff's history of cash management policy violations combined with her belief that Plaintiff could not improve his adherence to the policy. (Kelly Dep. at 47, 52.) The following Tuesday, Kelly informed Plaintiff that she had decided to terminate his employment. (Roche Dep. at 94, 99, 101.)

After the termination of his employment, Kelly replaced Plaintiff with another Caucasian employee by promoting the assistant manager working in the St. Clair Shores restaurant. (*Id.* at 105-106.) Additionally, after Plaintiff's successor voluntarily resigned, Kelly hired another Caucasian individual for the vacant general manager of the St. Clair Shores restaurant. (Kelly Dep. at 76-77.)

This matter comes before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

9

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   Analysis

Plaintiff asserts two reverse-race discrimination claims arising out of the decision of his supervisor, Kelly, to terminate his employment with Defendant. Plaintiff alleges that Defendant, through the conduct of Kelly, violated Michigan's ELCRA (Count I) and Title VII (Count II).

Defendant denies that Plaintiff was discriminated against on the basis of race, and that it should be granted summary judgment on Plaintiff's discrimination claims under three alternate grounds. First, Defendant argues that Plaintiff is judicially estopped from bringing either of the discrimination claims because he did not disclose them in his bankruptcy case. Second, Defendant argues that the Title VII claim must be dismissed because Plaintiff

10

failed to exhaust his administrative remedies. Finally, Defendant argues that Plaintiff has failed to provide evidence to demonstrate either a prima facie case of reverse-race discrimination or raise genuine issue of material fact regarding whether Defendant's decision to terminate him was pretextual.

As discussed below, this Court finds that: (1) Defendant is entitled to summary judgment as to Plaintiff's Title VII claim because Plaintiff does not contest dismissal of that claim; and (2) Defendant is entitled to summary judgment as to Plaintiff's ELCRA claim because Plaintiff has failed to provide evidence to demonstrate a prima facie case of reverse-race discrimination and has also failed to raise genuine issue of material fact regarding whether Defendant's decision to terminate him was pretextual.[3]

### A. Title VII Claim

Defendant next contends that it is entitled to summary judgment as to Plaintiff's Title VII claim because Plaintiff has failed to exhaust his administrative remedies. Plaintiff does not contest Defendant's contentions and abandons his Title VII claim. Accordingly, this Court dismisses Plaintiff's Title VII claim against Defendant. *See* Fed. R. Civ. P. 41.

### B. ELCRA Claim[4]

---

[3] As this Court is granting Defendant's motion for summary judgement on other grounds, it need not reach the merits of Defendant's alternative argument of judicial estoppel.

[4] *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, ___ U.S. ___, 129 S. Ct. 1862, 1867 (2009) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"); *see also* 13D C. Wright, *et al.*, Federal Practice and Procedure § 3567.3 (3d ed. 2008) ("Once it has dismissed the claims that invoked original bases of subject matter jurisdiction, all that remains before the federal court are state-law claims .... The district court retains discretion to exercise supplemental jurisdiction [over them]"). This Court will exercise supplemental jurisdiction over Plaintiff's state-law claims.

Finally, Defendant argues that summary judgment is appropriate as to Plaintiff's reverse-race discrimination claim under Michigan's ELCRA. In support, Defendant contends that Plaintiff has failed to: (1) provide evidence to demonstrate a prima facie case of reverse-race discrimination; or (2) raise genuine issue of material fact regarding whether Defendant's decision to terminate him was pretextual. As to both, this Court agrees.

Michigan's ELCRA prohibits employers from discriminating against employees on the basis of race. Mich. Comp. Laws § 37.2202. Claims of discrimination brought pursuant to the ELCRA are analyzed under the same evidentiary framework as similar claims brought under Title VII, and Michigan courts follow federal civil rights case law to interpret them. *Jackson v. Quantex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *see, e.g.*, *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 666 N.W.2d 186, 192-95 (Mich. 2003). A plaintiff may establish a prima facie case by offering either direct[5] evidence that Defendant intentionally discriminated against him because of his race or by presenting circumstantial evidence, following the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis. *See Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. Ct. App. 1999). Under either approach, Plaintiff must establish "a causal link between the discriminatory animus and the adverse employment decision." *Sniecinski*, 666 N.W.2d at 193. In this case, Plaintiff has presented no direct evidence of discrimination. Because Plaintiff is attempting to establish

---

[5] "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). In a race discrimination case, "direct evidence of racial discrimination is only that evidence where 'a racial motivation is explicitly expressed.'" *Diaz v. City of Inkster*, No. 05-70423, 2006 WL 2192929, at *8 (E.D. Mich. Aug. 2, 2006) (quoting *Amini*, 440 F.3d at 359); *see also Sniecinski*, 469 Mich. at 132 (adopting Sixth Circuit's definition of "direct evidence" in a discrimination context).

12

his discrimination claims with circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas* is applied.

The *McDonnell Douglas* burden-shifting framework consists of three stages. The plaintiff must first demonstrate a prima facie case of discrimination. *See Clack v. Rock-Tenn Co.*, 304 Fed. App'x 399, 402 (6th Cir. 2008). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). After the employer articulates a legitimate, non-discriminatory reason, the plaintiff must come forward with admissible evidence showing that the employer's proffered explanation is simply a pretext for unlawful discrimination. *See id.* Moreover, the business judgment of the employer may not be questioned because the issue is not whether the decision was wrong or mistaken, but whether the decision was discriminatory. *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).

### 1.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination

To establish a prima facie reverse-race discrimination case based on circumstantial evidence, the plaintiff must first show "background circumstances to support the suspicion that the defendant is the unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002). If the plaintiff meets this threshold inquiry, he must then show that: (1) he was qualified for his job and performed it satisfactorily; (2) despite his qualifications and performance, he suffered an adverse employment action; and (3) that he either was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *See Johnson*, 215 F.3d at 577.  Defendant argues that Plaintiff has not and

13

cannot establish any of the elements of his reverse-race discrimination claim. This Court agrees.

Despite Plaintiff's allegation of reverse-race discrimination, Plaintiff provides virtually no evidentiary support for his claims. Under Rule 56, the party opposing a motion for summary judgment "may not rely merely on allegations ... in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). If the disputed evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Plaintiff has not met this standard, and Defendant is entitled to summary judgment in its favor on Plaintiff's ELCRA claim.

### a. Background Circumstances

Plaintiff's claim of reverse-race discrimination fails to set forth the requisite background circumstances that give rise to a suspicion of discrimination against the majority in employment. Plaintiff may show the requisite background circumstances, for example, by using evidence of Defendant's unlawful consideration of race as a factor in hiring "which justifies a suspicion that incident of capricious discrimination against whites because of their race may be likely." *Goller v. Ohio Dept. of Rehab. & Corr.*, 285 Fed. App'x 250, 255 (6th Cir. 2008); *see also Zambetti*, 314 F.3d at 256. Such evidence is not present in this action. Plaintiff offers nothing more than vague, conclusory allegations that

14

Defendant discriminated against him.[6] Plaintiff has simply not provided any facts from which this Court could concluded that such background circumstances are present. Moreover, the decision to replace Plaintiff with a Caucasian employee is contrary to the existence of background circumstances showing that Defendant discriminated against the majority.

Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that the requisite background circumstances have been established that give rise to a suspicion of discrimination against the majority in employment. Accordingly, Plaintiff has failed to establish this element of his prima facie case of discrimination against Defendant.

### b.  Plaintiff's Job Performance Not Satisfactory

Plaintiff's claim of reverse-race discrimination also fails to present evidence to show that he was performing his job in a satisfactory manner. "An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations." *Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64, 69 (Mich. 1997). In other words, "[t]o establish that he was qualified," Plaintiff "must show that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Id.* (internal quotations and citations omitted).

Plaintiff has not provided evidence to show that he was performing his responsibilities as general manager in a manner establishing that he was "qualified." The evidence provided demonstrates that Plaintiff was repeatedly disciplined for his failure to follow

---

[6] Although Plaintiff has failed to expressly address this threshold inquiry in his response to Defendant's motion, the only arguable evidence of background circumstances that Plaintiff offers is the fact that Kelly is African-American while Plaintiff is Caucasian.

15

corporate policies. Plaintiff does not dispute that he engaged in conduct violating Defendant's policies nor does Plaintiff dispute the reasonableness of Defendant's decision to issue written disciplines for those violations. As general manager, the restaurant in which Plaintiff was responsible for was ranked last with respect to profits of the six restaurants that Kelly managed.

Although he does not fully concede, Plaintiff does not arguably dispute that he was not qualified for the general manager position. Instead, Plaintiff argues that he was qualified for a lower position, and that he was discriminated against because he was not offered a demotion in lieu of termination. This argument fails to consider the fact that Defendant had previously demoted Plaintiff for policy violations and that Defendant made a business decision to terminate his employment as a result of the most recent violation. Plaintiff also argues that, as he was only employed as a general manager for four months, he did not have a sufficient period of time to become proficient in the general manager position.[7] This argument fails to account for Plaintiff's many years of service with Defendant, his prior experience as a general manager in the late 1990s, and his prior experience as a general manager from November 2005 until his first demotion to assistant manager in April 2006.

Again, Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that he was performing his job in a satisfactory manner. Accordingly, Plaintiff has also failed to establish this element of his prima facie case of discrimination against Defendant.

---

[7] Plaintiff also alleges that he requested Kelly's assistance and guidance, but she refused–referring him to attain the requested information from his assistant manger.

16

### c. Either Replaced by a Member of Same Race or Treated Less Favorably than a Similarly Situated Individual Outside Protected Class

Plaintiff cannot demonstrate that he was replaced by a member outside his protected class. Plaintiff admits that, after the termination of his employment, Kelly replaced Plaintiff with another Caucasian employee: Kelly promoted the assistant manager working in the St. Clair Shores restaurant to replace Plaintiff. Additionally, after Plaintiff's successor voluntarily resigned, Kelly hired another Caucasian individual for the vacant general manager of the St. Clair Shores restaurant.

As Plaintiff cannot demonstrate that he was replaced by a member outside his protected class, he must, alternatively, establish that he was treated differently than similarly-situated non-Caucasian employees who engaged in the same or similar conduct. *See Johnson*, 215 F.3d at 577. To be deemed "similarly-situated," the individual with whom Plaintiff "seeks to compare his treatment must have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Although Plaintiff need not demonstrate an exact correlation with the employee who allegedly received more favorable treatment, "the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). To establish this element, Plaintiff is required to present evidence that all of the relevant aspects of his employment situation were "nearly identical" to those of the employee to whom he seeks to compare himself. *Goller*, 285 Fed. App'x at 255-56.

17

Plaintiff identifies one "similarly-situated" employee: Isaiah Walker (Walker). Walker is an African-American, employed by Defendant as a general manger under Kelly's supervision, whom Plaintiff alleges was engaged in similar conduct but was treated more favorably. Plaintiff contends that Walker was demoted, and not terminated as Plaintiff was, for similar policy violations. Plaintiff states, in his response to Defendant's motion, that Walker "was experiencing similar inadequacies as a general manager." (Pl.'s Resp. at 9.) Plaintiff then concludes that Defendant's decision to terminate Plaintiff while demoting Walker, in and of itself, demonstrates discrimination.

Apart from his own subjective beliefs, Plaintiff has not substantiated that Walker was similarly situated such that the requisite comparison can be made. Notwithstanding his vague and conclusory allegations, Plaintiff has failed to present evidence to substantiate that Walker has engaged in a similar type and of a similar quantity of policy violations or that Walker has experienced similar issues regarding restaurant profitability as Plaintiff experienced. Further, Plaintiff has not submitted evidence as to the specific performance problems or misconduct Walker had engaged in that led to his demotion or otherwise demonstrated that Walker had the same history of violating the cash management policy. (Roche Dep. at 114-116.)

Similarly here, Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that he was treated less favorably than other similarly situated general manager outside his protected class. Accordingly, Plaintiff has failed to establish this element of his prima facie case of discrimination against Defendant.

## 2. Defendant Articulated a Legitimate, Non-Discriminatory Reason

18

Even if Plaintiff had established a prima facie case of reverse-race discrimination, Defendant argues that it would nonetheless be entitled to summary judgment. This is so, Defendant argues, because it has presented evidence supporting a legitimate, non-discriminatory reason given for Plaintiff's termination and because Plaintiff has not presented evidence showing that such reasons for the challenged employment action was a pretext for discrimination.

This Court finds that Defendant has presented evidence supporting the legitimate, non-discriminatory reasons given for the employment action Plaintiff challenges. Specifically, Defendant has presented evidence of: (1) Plaintiff's repeated violations of corporate policies for which he was provided written discipline; (2) the poor performance of the restaurant that he, as general manager, was responsible for; and (3) the verbal counseling provided to Plaintiff regarding his failure to meet corporate expectations.

### 3. Plaintiff Cannot Establish that Reason Proffered is Pretext

Because Defendant satisfied its burden–showing that it had a legitimate, non-discriminatory reason for Plaintiff's termination–the burden of production now returns to Plaintiff. *Univ. of Cincinnati*, 215 F.3d at 573. To meet his burden, Plaintiff is required "to show the existence of evidence sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 526 (Mich. 2001) (internal quotation and citation omitted).

Plaintiff may establish pretext and "refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's

19

challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation and citation omitted). Plaintiff "may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (internal quotation and citation omitted). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] intentionally discriminated against him." *Kroger Co.*, 319 F.3d at 866 (internal quotation and citation omitted). Plaintiff has failed to meet that burden here.

There is no genuine issue of material fact regarding pretext. Plaintiff has not presented evidence showing Defendant's reasons for terminating him has no basis in fact. Likewise, Plaintiff presents no evidence showing that Defendant's conclusion, that he violated the cash management policy, was an insufficient reason to terminate his employment. Plaintiff concedes that the multiple incidents for which he received written discipline actually occurred and that it was proper for Defendant to impose such discipline for his violations of corporate policies. These facts alone are sufficient to support the decision to terminate.

Plaintiff also does not dispute that Defendant and Kelly reasonably believed that the violations of the cash management policy were sufficient to warrant his termination. *See Michael v. Caterpillar Fin. Svcs., Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (finding no genuine issue of material fact that would defeat summary judgment as long as an employer has an honest belief in its proffered nondiscriminatory reason).

> The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. We do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Id.* at 598-99. Plaintiff's personal belief that Defendant discriminated against him in its decision to terminate his employment instead of demote him is not enough. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003) (holding that the plaintiff's "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination") (internal quotation and citation omitted). Moreover, as observed by the Michigan Supreme Court, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Hazel*, 628 N.W.2d at 527 (internal quotation and citation omitted).

Even if Plaintiff had established a prima facie case of reverse-race discrimination under Michigan's ELCRA, he has not come forward with evidence that would allow a reasonable juror to find that the legitimate non-discriminatory business reasons Defendant asserted for its challenged actions were a pretext for discrimination. Accordingly, his claim of reverse-race discrimination under the ELCRA fails as a matter of law.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


s/Nancy G. Edmunds

21

Nancy G. Edmunds
United States District Judge

Dated: November 17, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 17, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager